HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SILVER VALLEY PARTNERS, LLC, a
Washington Limited Liability Company;
JAMES D. CHRISTIANSON, an individual;
the JAMES D. CHRISTIANSON LIVING
TRUST, a Trust formed under the laws of the
State of Washington; STERLING
PARTNERS, LLC, a Washington Limited
Liability Company; CHRISTIANSON
FAMILY, LLC, a Washington Limited
Liability Company; SILVER VALLEY
EAGLES, LLC, a Washington Limited
Liability Company; and NONSTOP
REVENUE, LLC, a Washington Limited
Liability Company,

Plaintiffs,

v.

RAY DE MOTTE, an individual; CAROL
STEPHAN, an individual; MELANIE
FARRAND, an individual; SILVER VALLEY
CAPITAL, LLC, an Idaho Limited Liability
Company,

Defendants.

Case No.  C05-5590 RBL

ORDER REGARDING
MOTION TO DISMISS

This matter comes before the Court on Defendants' Motion to Dismiss [Dkt. #11].  This is a
diversity case brought by Washington plaintiffs against Idaho defendants seeking damages and injunctive
relief for alleged fraud, breach of contract and other legal and equitable claims.  Defendants (three
individuals and a limited liability company) assert that this Court lacks *in personam* jurisdiction over them
or, in the alternative, that venue is improper.  For their part, plaintiffs contend that although inadequate for

1  general jurisdiction, defendants' conduct within the jurisdiction is sufficient to impose specific jurisdiction

2  over them.  Plaintiffs also argue that venue in the Western District of Washington is proper.  Finally,

3  plaintiffs request that if the Court concludes that personal jurisdiction is lacking or that venue is improper,

4  the case be transferred to Idaho and not dismissed.  28 U.S.C. § 1406(a).

5        Having considered all pleadings and papers associated with the motion, the Court **DENIES** the

6  motion as to defendant, De Motte.  The Court concludes that it does not have jurisdiction over defendants

7  Stephan, Farrand and Silver Valley Capital, LLC.  As a result, the Court must either dismiss Stephan,

8  Farrand and Silver Valley, or transfer the entire case to Idaho where the Court would have general

9  jurisdiction over each defendant named in the complaint.  Plaintiffs have twenty-one (21) days from the

10  date of this Order to inform the Court whether they choose to litigate the matter in the Western District of

11  Washington against Defendant De Motte as the sole defendant or litigate in Idaho against all named

12  defendants.

13  <u>BACKGROUND</u>

14        Plaintiffs are investors in a number of affiliated corporations and limited liability companies

15  purportedly controlled by defendant, Ray De Motte.  The individual defendants are each residents of Idaho

16  and all De Motte-related entities, including the one corporate defendant, are Idaho companies.  The

17  defendants allege that all investments made by plaintiffs were made in person, in Idaho.  The investments

18  all dealt with activities occurring, and enterprises operating, entirely within Idaho, specifically the "Silver

19  Valley" region of Northern Idaho.  The stated objective of the entities that received the investments was

20  the revitalization of silver mining activities in the area around Wallace and Kellogg, Idaho.  Defendants

21  point out that no meetings between plaintiffs and defendants occurred outside of Idaho.

22        Plaintiffs acknowledge that the initial investment by a plaintiff in a De Motte company occurred in

23  Idaho after plaintiff, James Christianson, was solicited by a securities broker from Idaho.  They contend,

24  however, that over the next year, plaintiffs invested over $3.2 million in 17 different businesses that

25  De Motte promoted in the pursuit of what he referred to as his silver revolution.  These investments were

26  the result of a series of interactions between Christianson and De Motte.  Plaintiffs provided the Court with

27  some of the e-mail communications from De Motte.  (Decl. of James D. Christianson, Dkt. #19).  The e-

28  mails focus on fund raising and organization issues concerning the so-called silver revolution.  In the

1   communications, De Motte implores Christianson to raise money from other investors and to invest money

2   that he may have access to.  It is these investments, made pursuant to such requests, in addition to others,

3   that plaintiffs now contend were obtained by fraud and conspiracy to commit fraud on the part of

4   defendants.  Plaintiffs assert that the link between the investments and the e-mails sent by DeMotte in

5   Idaho to Christianson in Washington is sufficient to satisfy the requirements of specific jurisdiction.[1]

6 DISCUSSION

7   I.      PERSONAL JURISDICTION

8         A.    Raymond De Motte

9         Plaintiffs claim that the Court has specific jurisdiction over defendant, De Motte, under

10   Washington's long arm statute and the Constitution.  They base their argument on alleged fraudulent

11   inducements which were in part communicated through e-mails directed from Idaho by De Motte to

12   Plaintiff Christianson, in Washington.  Plaintiffs further contend that the inducements resulted in substantial

13   investments to De Motte (and/or entities he controlled) which comprise a significant portion of the harm

14   plaintiffs claim as damages in this lawsuit.

15         In the context of a challenge to the Court's jurisdiction, a plaintiff's factual allegations are

16   construed in the light most favorable to him.  Plaintiff is required only to make a *prima facie* showing of

17   personal jurisdiction.  See, for example, *Silent Drive, Inc. v. Strong Industries, Inc.,* 326 F.3d 1082, 1087

18   (Fed. Cir. 2003).

19         To establish jurisdiction, plaintiffs must show that Washington's jurisdictional statute confers

20   jurisdiction over defendants and that the exercise of jurisdiction accords with principles of due process.

21   *Shute v. Carnival Cruise Lines,* 897 F.2d 377, 381 (9th Cir. 1990).  Washington's long-arm statute has

22   been interpreted to be co-extensive with the limits of federal due process.  *Id.*

23         The Due Process Clause protects an individual's liberty interest in not being subject to the binding

24   judgments of a forum with which he has established no meaningful "contacts, ties, or relations."

25   *International Shoe Co. v. Washington,* 326 U.S. 310, 319 (1945).  By requiring that individuals have "fair

26   warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," *Shaffer v.*

27

28       [1]Christianson also alleges that most subscription agreements were mailed to him in Washington, whereupon he would sign and return them to Idaho.  Christianson Decl., para. 22 (Dkt. #19).  Defendants contest this assertion.

1  *Heitner*, 433 U.S. 186, 218 (1977), the Due Process Clause "gives a degree of predictability to the legal

2  system that allows potential defendants to structure their primary conduct with some minimum assurance

3  as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v.*

4  *Woodson*, 444 U.S. 286, 297 (1980).

5       Here, the plaintiffs allege that the lawsuit (at least as to defendant De Motte) arises out of or is

6  related to De Motte's contacts with Washington, thus meeting the requirements of specific, as opposed to

7  general, jurisdiction.[2]  Where a forum seeks to assert specific jurisdiction over an out-of-state defendant

8  who has not consented to suit there, the "fair warning" requirement is satisfied if the defendant has

9  "purposefully directed" his activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.,* 465 U.S.

10  770, 774 (1984), and the litigation results from alleged injuries that "arise out of or relate to" those

11  activities, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).  In that case, due

12  process analysis concludes that the defendant's conduct and connection with the forum state are such that

13  he should reasonably anticipate being haled into Court there. *World-Wide Volkswagen Corp. v. Woodson*,

14  *supra*, 444 U.S., at 297.

15       In defining when it is that a potential defendant should "reasonably anticipate" out-of-state

16  litigation the Court is required to look at the conduct of the out-of-state defendant and not to unilateral

17  activity of the in-state plaintiff.  It is essential that there be some act by which the defendant purposefully

18  avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and

19  protections of its laws. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  In this way, the Court ensures that

20  a defendant will not be haled into a jurisdiction solely as a result of "random", "fortuitous", or "attenuated"

21  contacts, *Keeton v. Hustler Magazine, Inc.,* supra, 465 U.S. at 774, or of the unilateral activity of another

22  party or a third person. *Helicopteros Nacionales di Colombia, S.A. v. Hall*, supra, 466 U.S. at 417.

23  Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant that

24  create a substantial connection with the forum state. *McGee v. International Life Ins. Co.,* 335 U.S. 220,

25  223 (1957).  Thus where the defendant "deliberately" has engaged in significant activities within a state, or

26  has created "continuing obligations" between himself and residents of the forum, he manifestly has availed

27  _____

28       [2]General jurisdiction exists when the cause of action is unrelated to the defendant's activity and the defendant's activities
in the forum state are either "substantial" or "continuous and systematic." *Burger Kiing v. Rudzewicz*, 471 U.S. 462, 472 (1985).

1   himself of the privilege of conducting business there, and because his activities are shielded by the benefits

2   and protections of the laws of the forum it is presumptively not unreasonable to require him to submit to

3   the burdens of litigation in that forum as well. *Burger King v. Rudzewicz*, 471 U.S. 462, 475-6 (1985).

4          Here, plaintiffs allege that defendant De Motte, made false promises to induce plaintiffs to invest in

5   De Motte-controlled entities that played an essential part in De Motte's silver revolution.  The e-mail

6   communications directed by De Motte to Christianson (who was in Western Washington at the time)

7   beseech Christianson to send his own money and to solicit the money of others, in significant amounts, to

8   the end that the silver revolution would ultimately make them all very wealthy.  Accepting plaintiffs'

9   assertions of fraud as true, as we must, the purposeful and repeated communication with a Washington

10  resident resulting in the investment of millions of dollars in out-of-state enterprises is sufficient to confer *in*

11  *personam* jurisdiction over the out-of-state solicitor for claims arising out of such solicitations.  The

12  communications were part of De Motte's outreach to create and maintain continuing relationships and

13  obligations with residents of Washington.  De Motte's targeting of Washington residents is neither random,

14  fortuitous nor attenuated.

15         Under these circumstances, a state generally has a "manifest interest" in providing its residents with

16  a convenient forum for redressing injuries inflicted by out-of-state actors.  *McGee v. International Life Ins.*

17  *Co.,* supra, 355 U.S. at 223.  Where individuals purposefully derive benefit from their interstate activities,

18  it may well be unfair to allow them to escape having to account in other states for consequences that arise

19  proximately from such activities.  The Due Process Clause may not be wielded as a territorial shield to

20  avoid interstate obligations that have been voluntarily assumed.  And because modern transportation and

21  communications have made it much less burdensome for a party to defend himself in a state where he

22  engages in economic activity, it usually will not be unfair to subject him to the burdens of litigating in

23  another forum for disputes relating to such activity.  *McGee v. International Life Ins. Co.,* supra, 355 U.S.

24  at 223.

25         According to the allegations in plaintiffs' complaint, and supported by copies of e-mail

26  communications, De Motte directly solicited, and persuaded others to solicit, investments from around the

27  world.  His e-mails to Christianson are replete with references to fund raising activities in Canada, Europe

28  and various other parts of the United States.  Washington residents were included among the list of

potential investors ear-marked for solicitation.  Activities initiated by De Motte and directed to Washington formed an integral part of the solicitation effort.  Under the circumstances, it is reasonably foreseeable that De Motte would be hailed into court in Washington if those solicitation efforts resulted in investments that gave rise to claims of fraud.  Jurisdiction may not be avoided merely because the defendant did not physically enter Washington to secure the investments.  As Justice Brennan explained in *Burger King*:

> Although territorial presence frequently will enhance a potential defendant's affiliation with a state and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a state in which business is conducted.  So long as a commercial actor's efforts are "purposefully directed" toward residents of another state, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.  [citation omitted]

*Burger King Corp. v. Rudzewicz,* supra, 471 U.S. at 476.

In this case, De Motte utilized the telephone and e-mail to solicit investment dollars in other states, including Washington.  The fact that he did not travel to Washington to meet with these particular plaintiffs, or that the investments were personally delivered to De Motte in Idaho does not alter this Court's conclusion that De Motte (1) purposefully availed himself of the privilege of conducting activities in Washington and (2) plaintiffs' claims arise out of or result from those activities.

The Court is also of the opinion that the exercise of jurisdiction over De Motte is reasonable under the circumstances.  Once it has been decided that a defendant purposefully established minimum contacts within the forum state, other factors must be considered to determine whether the assertion of personal jurisdiction would comport with traditional notions of fair play and substantial justice.  *International Shoe v. Washington,* supra, 326 U.S. at 320.  Where relevant, the Court may evaluate the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiffs' interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering substantive social policies.  *World-Wide Volkswagen v. Woodson,* supra, 444 U.S. at 292.  An additional factor for consideration is the existence of an alternative forum.  *Core-Vent Corp. v. Nobel Industries*, 11 F.3d 1482, 1486-1487 (9th Cir. 1994).

Here, the result of balancing these factors supports the reasonableness of jurisdiction.  Where an

1   out-of-state defendant targets Washington investors using material misrepresentations in the sales effort as

2   plaintiffs allege, the State of Washington has an interest in adjudicating any resulting dispute.  Plaintiffs

3   also have a strong interest in having the matter resolved in a convenient forum.  The burden on defendant

4   in defending in Western Washington is comparable to the burden placed on plaintiffs to pursue the action in

5   Idaho.  Moreover, depending on where the Idaho judge decided to conduct the trial (Boise or Coeur

6   d'Alene), an Idaho venue may cause defendant to travel as far in Idaho as he would to Western

7   Washington.  In either case, the burden to defend in Washington versus Idaho is minimal.  In addition,

8   there appears to be no conflict between Idaho and Washington law that would impact the Court's decision

9   on this issue.  Finally, the existence of an alternative forum and the most efficient judicial resolution of the

10   controversy are factors which weigh in favor of defendants' position but are neutralized by the choice

11   forced upon plaintiff by this Court Order.

12       The requirements for exercising limited (specific) jurisdiction over Raymond De Motte have been

13   met and plaintiffs' claims against him will not be dismissed for lack of *in personam* jurisdiction.[3]

14       B.    Carol Stephan and Melanie Farrand

15       Plaintiffs' claim of personal jurisdiction over Carol Stephan and Melanie Farrand is not based on

16   any "substantial, continuous and systematic" activities conducted by Stephan and Farrand within the State

17   of Washington (general jurisdiction).  Nor do plaintiffs provide evidence of forum-related activities by

18   which Stephan or Farrand "purposefully availed" themselves of the privilege of conducting activities in

19   Washington (specific/limited jurisdiction).  Rather, they assert that this Court has *in personam* jurisdiction

20   over these defendants because they each knowingly conspired with De Motte to defraud the plaintiffs.

21   They cite cases outside this Circuit validating the "conspiracy theory" of personal jurisdiction and claim

22   that each of these defendants knew or should have known that De Motte was committing acts in

23   Washington in furtherance of that conspiracy.

24       The Ninth Circuit has yet to reach a conclusion on the validity of a conspiracy theory of personal

25   jurisdiction.  *Underwager v. Channel 9 Australia*, 69 F.3d 361, 364 (9th Cir. 1995).  The State of

26   Washington, however, has rejected the conspiracy theory of long-arm jurisdiction, finding that the theory

27
28       [3]The Court does not base its conclusion on plaintiffs' assertions that (1) James Christianson was an agent of De Motte operating in Washington or (2) an interactive website owned by a non-defendant company affiliated with De Motte was available to Washington residents.

violates due process principles. *Hewitt v. Hewitt,* 78 Wn. App. 447, 454-55 (1995), review denied 133 Wn.2d 1030 (1998). This Court agrees with the reasoning of *Hewitt* and holds that the conspiracy theory does not provide independent basis for asserting *in personam* jurisdiction. If an out-of-state defendant's activities do not meet the test for imposition of either general jurisdiction or specific jurisdiction, traditional notions of "fair play and substantial justice" would be abused by hailing that defendant into a local court on the mere claim that the defendant was a co-conspirator with a defendant whose activities do meet the test.

This Court lacks *in personam* jurisdiction over defendants Stephan and Farrand.

C.    Silver Valley Capital, LLC

In their complaint, plaintiffs alleged that this Court had personal jurisdiction over Silver Valley Capital, LLC because it had a bank account in Spokane Washington. Complaint [Dkt. #1], para. 11. Defendants specifically deny the allegation and plaintiffs provide no evidence in support of their original assertion. Instead, they assert that several plaintiffs are members of Silver Valley Capital, LLC and since plaintiffs reside in Washington, Silver Valley is "doing business" in Washington as a consequence. In addition, plaintiffs argue that Silver Valley's contract with Washington residents and the subsequent breach of that/those contract(s) creates personal jurisdiction over Silver Valley. Plaintiffs' arguments are not persuasive. The fundamental question is whether Silver Valley "purposefully availed" itself of the privilege of doing business in Washington such that it could reasonably anticipate being haled into Court here should those business activities result in a claim. Merely entering into a contract with a resident of Washington does render the counterpart subject to personal jurisdiction in Washington regardless of other circumstances. Similarly, the mere presence in Washington of a member of an out-of-state limited liability company does not, standing alone, meet the test for either general or specific jurisdiction. Plaintiffs have failed to provide evidence that the requirements for invoking *in personam* jurisdiction are met as to Silver Valley Capital, LLC.

The Court lacks *in personam* jurisdiction over Silver Valley Capital, LLC.

II.    VENUE AS TO DEFENDANT DE MOTTE.

An action based solely on diversity jurisdiction may be brought only in venues that meet the criteria of 28 U.S.C. § 1391(a). The chosen venue need not be the best venue, only a qualifying venue. See,

1  *Conttman Transmission Systems v. Martino*, 36 F.3d 291, 294 (3rd Cir. 1994) and *Bates v. C&S Adjusters,*

2  *Inc.,* 980 F.2d 865, 867 (2nd Cir. 1992).  As long as Western Washington meets the requirements of 28

3  U.S.C. § 1391(a), venue is proper.

4       Plaintiff argues that he is a resident of Idaho, his affiliated entities are residents of Idaho and that

5  the majority of witnesses to this dispute are residents of Idaho.  Clearly, Idaho qualifies as a proper venue

6  for this proceeding pursuant to 28 U.S.C. § 1391(a)(1).

7       Western Washington also qualifies as a proper forum under 28 U.S.C. § 1391(a)(2) because a

8  substantial part of the events or omissions giving rise to the claims occurred in Western Washington.  The

9  events must be substantial, have a nexus with the claims alleged, and reflect defendants' activities, not

10  those of plaintiffs.  See, *Jenkins Brick v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003); *Conttman*

11  *Transmission Systems v. Martino*, 36 F.3d 291, 294 (3rd Cir. 1994); *Woodlee v. Dahm*, 70 F.3d 983, 985

12  (9th Cir. 1995).  The focus of an injury in a tort action is a relevant factor in determining venue.  *Myers v.*

13  *Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001).  Plaintiffs complaint asserts claims of fraud and

14  breach of fiduciary duty, among others.  Plaintiffs reside in, or do business in, Western Washington.  Their

15  investments, which form the loss giving rise to their claims, were secured in substantial part by De Motte's

16  activities directed at them in Washington.  If as plaintiffs allege, the investments were obtained as a result

17  of fraud, the harm occurred in Western Washington.

18       Western Washington is a proper venue for plaintiffs' claims against Ray De Motte.

19  **<u>CONCLUSION</u>**

20       Defendants' Motion to Dismiss Ray De Motte for lack of *in personam* jurisdiction [Dkt. #11] is

21  **DENIED**.  Plaintiffs will have twenty-one (21) days from the date of this Order to inform the Court

22  whether they want the Court to retain jurisdiction over the case or transfer it to Idaho pursuant to 28

23  U.S.C. § 1406(a).  If the Court retains jurisdiction, defendants Stephan, Farrand and Silver Valley Capital,

24  LLC will be dismissed as this Court lacks personal jurisdiction.  At this time the Court does not decide to

25

26

27  what extent, if any, the plaintiffs' prayer for relief exceeds this Court's authority.  Defendants' Motion for

28  Attorney Fees [Dkt. #11] is **DENIED.**

Dated this 28th day of November, 2005.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE