1

2

3

4

5

6

7

HONORABLE RONALD B. LEIGHTON

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

11

12

13

14

15

16

17

18

19

20

21

22

SILVER VALLEY PARTNERS, LLC, a
Washington Limited Liability Company;
JAMES D. CHRISTIANSON, an individual;
the JAMES D. CHRISTIANSON LIVING
TRUST, a Trust formed under the laws of the
State of Washington; STERLING
PARTNERS, LLC, a Washington Limited
Liability Company; CHRISTIANSON
FAMILY, LLC, a Washington Limited
Liability Company; SILVER VALLEY
EAGLES, LLC, a Washington Limited
Liability Company; and NONSTOP
REVENUE, LLC, a Washington Limited
Liability Company,

Plaintiffs,

v.

RAY DE MOTTE, an individual, et al.

Defendants.

Case No.  C05-5590 RBL

ORDER GRANTING DEFENDANT
RAYMOND DE MOTTE'S  MOTION
TO TRANSFER

23

24

25

26

27

28

This matter is before the Court on defendant Raymond De Motte's motion to transfer venue to

the District of Idaho.  Dkt. #141.  Defendant Sterling Mining Company joins in the motion.  Dkt. #159.

For the reasons discussed below, this motion is GRANTED.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BACKGROUND

This dispute arises out of a series of failed investments plaintiffs made in entities related to defendants' silver mine, the Sunshine mine. Dkt. #1-1 at p. 2. Plaintiffs invested in the mine after exchanging multiple phone calls and emails with defendant De Motte and attending meetings with him in Idaho. The investments consisted of a series of subscription agreements, which were executed in Washington by plaintiff James D. Christianson, and hand delivered to defendant De Motte in Idaho. Each agreement contains a choice of law provision selecting Idaho law to govern the parties' rights under the agreement.

Plaintiffs filed their original complaint on September 12, 2005, and filed their second amended complaint on June 30, 2006. The Court has decided a series of motions made by a variety of defendants to dismiss for lack of personal jurisdiction and improper venue under 28 U.S.C. § 1406. Defendant De Motte now asks the Court to transfer venue to the District of Idaho under 28 U.S.C. § 1404 for the convenience of the parties and witnesses, and in the interest of justice.

Plaintiffs seek to remain in the Western District of Washington, arguing primarily that too much time has passed since the filing of the original complaint, and because of the number of motions filed and adjudicated here, the litigation is too far along to reasonably allow transfer. Plaintiffs contend that if this case proceeds to trial in the Western District of Washington, they will use video recorded depositions to present witnesses' testimony to the jury. Defendants argue because plaintiff plans to present the testimony of up to forty-three Idaho-based witnesses by video, the trial in this matter will consist primarily of the jury watching television. Plaintiffs neither claim nor demonstrate they will be prejudiced in the event of transfer.

Based on the parties' arguments, the factors enumerated in *Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000), and other, additional factors, the Court concludes that defendants' motion to transfer should be GRANTED.

DISCUSSION

Under 28 U.S.C. § 1404(a), the Court has broad discretion to transfer cases, according to a case-by-case consideration of convenience and fairness, and in the interest of justice.  28 U.S.C. § 1404(a); *Stewart Org. Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988).  The Court may transfer any civil action "to any other district . . . where it might have been brought."  28 U.S.C. § 1404(a).  The proposed transferee court must have subject matter jurisdiction, the defendants must be subject to personal jurisdiction in the transferee district, and venue must be proper.[1] *Hoffman v. Blaski*, 363 U.S. 335, 343-44, 80 S.Ct. 1084 (1960).  In deciding whether to transfer on grounds of convenience and in the interest of justice, the Court considers eight factors:

(1) the location where the relevant agreements were negotiated and executed;
(2) the state that is most familiar with the governing law;
(3) the plaintiff's choice of forum;
(4) the respective parties' contacts with the forum
(5) the contacts relating to the plaintiff's cause of action in the chosen forum;
(6) the differences in the cost of litigation in the two forums;
(7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and
(8)  the ease of access to sources of proof.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

The moving party has the burden of showing that the balance of convenience of the parties and witnesses and the interest of justice weighs heavily in favor of transfer to overcome the strong presumption in favor of the plaintiffs' choice of forum.  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 234, 255-56, 102

---

[1]While the District of Idaho clearly has subject matter jurisdiction over the claims and venue is proper in Idaho, plaintiffs argue that the District of Idaho might not have personal jurisdiction over Utah-based defendants Cohne Rappaport & Segal and Mark Lehman.  Those defendants have moved this Court to dismiss for lack of personal jurisdiction, arguing that they have insufficient ties to Washington.  Defendants also assert that they will argue that the Idaho court lacks personal jurisdiction in the event that this case is transferred there.  Dkt. #156-1.

1  S.Ct. 252, 70 L.Ed.2d 419 (1981); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843

2  (9th Cir. 1986); *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

### 1.  Location Where Relevant Agreements Were Negotiated and Executed

The first *Jones* factor is the location where the relevant agreements were negotiated and executed.
Defendant De Motte solicited investments from plaintiffs located in Washington, and plaintiff Christianson
signed the subscription agreements in Washington.  Declaration of James D. Christianson in Support of
Plaintiffs' Opposition to Defendants' Motion to Dismiss, Dkt. #19, ¶ 22.  Plaintiffs also contend that their
injuries occurred in Washington, and that a series of voice mails and emails were exchanged.  However, all
in-person dealings occurred in Idaho, and plaintiffs hand-delivered their payments for the stock
subscriptions in Idaho. Dkt. #1-1 at ¶ 31; Declaration of Raymond De Motte in Support of Motion to
Dismiss, Dkt. #13 at ¶ 13.  Because the activities which led to the execution of the relevant agreements
occurred in both Idaho and in Washington, this factor is neutral as to defendant's motion to transfer.

### 2.  State Most Familiar with Governing Law

The second factor to consider is which state is most familiar with the governing law.  Most, if not
all, of the subscription agreements between the parties contain choice of law provisions specifying the
application of Idaho law.  *See*, *e.g.*, Exhibit A to Declaration of Laurel Siddoway in Support of Motion to
Transfer Venue at p. 15.  However, plaintiffs also assert claims under Washington securities laws and the
Washington Consumer Protection Act.  As a result, either court will need to apply Washington law and
Idaho law to different claims.  While it is likely that the District of Idaho will be more familiar with Idaho
law, it is equally likely that this Court is more familiar with Washington law.  Therefore, this factor is
neutral as to defendant's motion to transfer.

### 3.  The Plaintiffs' Choice of Forum

The third *Jones* factor is the plaintiff's choice of forum.  While this factor weighs in favor of the plaintiff, *see Piper Aircraft*, 454 U.S. at 255-56, it is not dispositive in considering a motion to transfer. *Jones*, 211 F.3d at 499 n.21; *see Stewart*, 487 U.S. at 31 (holding that a single factor determining transfer would defeat the Congressional directive that multiple factors should determine transfer) (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955)).  Here, plaintiffs chose to file these claims in the Western District of Washington.  However, they are also pursuing similar claims against related defendants in Idaho state court.  For this reason, the plaintiffs' choice of forum is not a significant factor in favor of denying the motion to transfer.

### 4.  The Respective Parties' Contacts with the Forum

Fourth, the Court considers the respective parties' contacts with the forum.  The plaintiffs clearly have contacts with the Western District of Washington, as they are residents of Washington or are Washington limited liability companies.  Defendant De Motte appears to have very limited contacts with the state.  He neither owns property nor maintains bank accounts in Washington.  Declaration of Raymond De Motte in Support of Motion to Dismiss, Dkt. #13 at ¶ 15.  Defendant De Motte has traveled to the Seattle area, apparently searching for other investors in the Sunshine mine.  Declaration of James D. Christianson in Support of Plaintiffs' Opposition to Motion to Dismiss, Dkt. #19 at ¶ 18.

However, plaintiffs also have significant contacts with the District of Idaho.  Plaintiff James D. Christianson traveled to Idaho to attend to matters involving the Sunshine mine multiple times.  He attended the Silver Valley Mining Association's first annual meeting in Idaho, and also participated in a tour of Silver Valley.  Dkt. #1-1 at ¶ 16.  Additionally, Mr. Christianson hand-delivered seventeen subscription agreements to defendant De Motte in Idaho.  Mr. Christianson and Mr. Varney, a member of plaintiff Sterling Partners, also met with defendant De Motte in Idaho multiple times.  Declaration of

Raymond De Motte in Support of Motion to Dismiss, Dkt. #13 at 4-5.  Further, all the defendants, with the exception of Chone Rappaport & Segal and Mark Lehman, are Idaho residents or Idaho limited liability companies.  Given that both parties have case-related contacts with the District of Idaho, and only plaintiffs have case-related contacts with the Western District of Washington, the factor of the respective parties' contacts with the forum weighs in favor of transfer to the District of Idaho.

### 5.  The Contacts Relating to the Plaintiffs' Cause of Action in the Chosen Forum

The fifth *Jones* factor is the contacts relating to the plaintiffs' cause of action in the chosen forum.  Here, defendants sent numerous emails and made many phone calls to plaintiffs in Washington, and plaintiffs allege that their investments were made as a result of those phone calls and emails.  Those, however, are the only contacts that relate to plaintiffs' claims in Washington, and further, the complaint does not allege the presence of any defendant in Washington.  Therefore, this factor is neutral as to defendant's motion to transfer.

### 6.  The Differences in the Costs of Litigation in the Two Forums

The sixth factor the Court considers is the cost of litigation in the two forums.  Both sides are likely to save significant amounts by requiring witnesses to travel from their homes to Coeur d'Alene instead of Tacoma, since the vast majority of both parties' witnesses are in Idaho.  Further, transfer would alleviate plaintiffs' anticipated costs of recording witnesses' depositions to present at trial.

Additionally, transfer should not be allowed if the party requesting transfer is merely attempting to shift the inconvenience from one party to the other.  *Decker* 805 F.2d at 843.  However, *Decker* involved a situation where half the witnesses were located in the forum state and half were located in the transferee state.  It is not so equally divided here.  With the exception of two parties and an unidentified number of expert witnesses, all but two of plaintiffs' nonparty witnesses are located in Idaho, as are all of defendants' witnesses.  Therefore, this factor weighs in favor of transfer.

**7.  The Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses**

The seventh factor the Court considers is the availability of the compulsory process to compel attendance of unwilling nonparty witnesses.  At least three witnesses are subject to this Court's subpoena power: Wesley Varney, J.D. Christianson, and the plaintiffs' experts.  Plaintiffs' Opposition to Defendant's Motion to Transfer, Dkt. #182 at p. 8.  However, J.D. Christianson is one of the plaintiffs, Wesley Varney is a member of plaintiff Sterling Partners, and plaintiffs' other witnesses are experts, presumably paid for their testimony.  None of these witnesses will likely be unwilling to testify, which eliminates entirely plaintiffs' ability to compel the attendance of witnesses.  The only other nonparty Washington-based witness is reporter Bruce Faber, who was issued a document subpoena, and is not expected to attend the trial.  Declaration of Laurel Siddoway in Support of Motion to Transfer Venue, Dkt. #142 at p. 6. Plaintiffs' remaining two witnesses, Horizon Credit Union and Williams and Webster, P.S., are located in Spokane, and are subject to the Eastern District of Washington's subpoena power.  All other nonparty witnesses reside in Idaho, well within the District of Idaho's power to compel an unwilling witness' attendance.  Therefore, this factor weighs in favor of transfer.

**8.  The Ease of Access to Sources of Proof**

The final *Jones* factor is the ease of access to sources of proof.  Both parties have already produced significant amounts of documentary evidence, and subpoenas have been issued in both the District of Idaho and in the Western District of Washington.  However, discovery is not complete, and the documentary evidence and virtually all witnesses are located in Idaho.  Plaintiffs have disclosed forty-five witnesses, thirty-nine of whom have also been served document subpoenas.  Declaration of Laurel Siddoway in Support of Motion to Transfer Venue, Dkt. #142 at p. 2-5.  Of the forty-five witnesses, forty-three are located in Idaho, and thirty-seven of the forty-three Idaho-based witnesses have been served with at least one document subpoena.  Therefore, this factor weighs in favor of transfer.

**9.  Additional Factors**

Additional factors outside the *Jones* multi-factor test also support transfer, including the amount of time between the complaint and the motion to transfer, a forum selection or choice of law clause, and most importantly, convenience of the witnesses.

The convenience of the witnesses is frequently the most important factor when determining which forum would be most appropriate. *Florens Container v. Cho Yang Shipping*, 245 F.Supp.2d 1086, 1092 (N.D. Cal. 2002) (citing 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851 (2d ed. 1987)).  Here, a significant number of witnesses would be inconvenienced if the case remained here.  Plaintiffs have disclosed forty-three Idaho-based witnesses, whereas they have disclosed only three nonparty, Washington-based witnesses, reporter Bruce Faber, Horizon Credit Union and Williams and Webster, P.S.  The District of Idaho has issued thirty-seven document subpoenas, whereas the Eastern District of Washington has issued two, and Western District of Washington has issued only one.  Witnesses would be required to drive or fly from Coeur d'Alene, for example, to Tacoma, a distance of approximately 325 miles.  Further, any of those forty-three witnesses that do not wish to make that trip would be beyond the reach of this Court's subpoena power.

Second, a forum selection clause is a significant factor in the court's 1404(a) analysis.  *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000).  While the subscription agreements in this case do not contain a forum selection clause, they do contain choice of law provisions, selecting Idaho law to govern the parties' rights under the agreement.  *See, e.g.,* Exhibit A to Declaration of Laurel Siddoway in Support of Motion to Transfer Venue, Dkt. #142 at p. 15.  The fact that the parties specifically selected Idaho law, while not as persuasive as selecting Idaho as the forum, nevertheless favors transfer to Idaho.

The amount of time that has passed between service of the summons and complaint and the motion to transfer is a third factor in considering whether to transfer a case on convenience grounds. *See Henry v. First National Bank of Clarksdale*, 50 F.R.D. 251 (N.D. Miss. 1971), *vacated on other grounds*, 444 F.2d 1300 (5th Cir. 1971), *cert. denied*, 405 U.S. 1019 (1972) (the court refused to grant a transfer where it would waste time). The motion should be brought as soon as the inconvenience becomes apparent, preferably with or before the first responsive pleading. *S.E.C. v. Savoy Industries, Inc.*, 587 F.2d 1149, 1156 (DC Cir. 1978). There is no firm deadline, however, and the motion can be made at any time.

The Court may grant a § 1404(a) transfer unless (1) the delay would cause undue prejudice to the plaintiff; (2) the delay would substantially increase the expense of the litigation; or (3) the late motion is brought merely as a dilatory practice. *Blumenthal v. Management Assist., Inc.*, 480 F. Supp. 470, 471 (N.D. Ill. 1979). Here, defendant De Motte sought to transfer only two months after plaintiffs filed the second amended complaint. And while defendant De Motte certainly knew of the potential inconvenience for him and his witnesses at the time the first complaint was filed, he did not necessarily know that nearly all of plaintiff's witnesses would also be located in Idaho.

Further, defendant explains that he waited for the motion to transfer until the second amended complaint was filed because he understood that plaintiffs were making "significant amendment[s], including [adding] new parties." Defendant's Reply in Support of Motion to Transfer Venue, Dkt. #190 at p. 5. Additionally, the trial date is almost six months away, and granting the motion to transfer would not unduly prejudice plaintiffs. Finally, there is neither argument nor evidence that defendant De Motte's motion to transfer is a dilatory practice.

The final important factor is the Court's use of a jury. Plaintiffs assert that they do have the option, of which they would likely avail themselves, of having their Idaho-based witnesses testify by video conference or by videotaping witnesses' depositions and playing them for the jury at trial. As defendant De

Motte points out, this means the jury would spend a significant amount of time watching television.  This is a waste of a Washington jury's time and effort, particularly in light of the fact that a similar jury in Idaho can make the same decision after watching live witnesses, thus making a much more accurate assessment of a witness' credibility.  Therefore, this factor weighs in favor of transfer.

In light of all the factors weighing for and against transfer, this Court finds that the balance weighs in favor of GRANTING defendant's motion to transfer.

CONCLUSION

Having weighed these factors, the Court, in its discretion, GRANTS the defendant's motion to transfer. Dkt. #141.  This matter shall be TRANSFERRED to the United States District Court for the District of Idaho.  Defendants Chone Rappaport & Segal and Lehman's motion to dismiss for lack of personal jurisdiction, Dkt. #156, and defendants Stephan and Spring Creek Properties' motions to dismiss for lack of personal jurisdiction, Dkt. #164, are DENIED as MOOT.  All other pending motions shall be addressed by the District of Idaho.  This Court's scheduling Order(s) is VACATED.

Dated this 21st day of September, 2006.


RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE